UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED

DEC -9 2009

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

UNITED STATES OF AMERICA,          :

        v.                        :     Crim. No. 2:07cr113

KENYATTA HASANI ADMAS,            :

                Defendant.        :

---

### Motion regarding proposed 1:1 ratio for crack and powder cocaine offenses pursuant to 18 U.S.C. §3582(c)(2) under Federal Rules of Criminal Procedure

Defendant Kenyatta Hasani Adams, acting pro se, hereby respect-
fully request consideration under §3582(c)(2) for an order grant-
ing "resentencing" under a proposed "1-to-1 ratio" in accordance
with "sentence disparity" for crack (Cocaine Base) and powder
cocaine offenders. This Court is aware that a 1-to-1 ratio for
crack and powder cocaine offenses has been suggested to Congress.
On July 29, 2009, the United States House of Representatives'
Judiciary Committee approved Bill H.R. 3245 (affecting sentence
disparity governing this ussue), the Fairness in Cocaine Sentenc-
ing Act of 2009. This defendant is one of these individuals.

### Relevant consideration

As the Court is aware, in 2007, the United States Sentencing
Commission did as much as possible to lessen the harmful impact
of the crack-cocaine penalties by amending §2D1.1(c) of the Sent-
encing Guidelines. This amendment reduced the Base (Total) Offense
Level for "crack" (Cocaine Base) cocaine offenses by two levels.
Accordingly, many crack-cocaine defendants, including this defend-

ant, were able to receive a minor reduction in their sentence. However, the changes proposed by the "Obama Administration" are far more reaching and will have a significant impact on further reducing sentences like Defendant Adams, who was a much less minor participant as a crack-cocaine offender.

The United States Department of Justice has now issued memoranda to various United States District Attorney offices and the United States District Judges outlining the new Department of Justice policy in this regard.

In the policy statement, it states that the starting point for sentencing in crack-cocaine cases is "now a 1-to-1 ratio." As a result of this new Department of Justice policy, judges from courts throughout the Circuits have begun taking into consideration the new, more lenient, policy by imposing much lower sentences in crack-cocaine cases [including resentencing] than they otherwise would have.

In a recent opinion by the Honorable U.S. District Judge Paul L. Friedman in the case of United States v. Lewis (U.S. District Court for the District of Columbia, 2009), Judge Friedman stated, in part,

> In short, it is now established that a sentencing court may reject the 100-to-1 ratio of the Guidelines as a matter of policy and without regard to the characteristics of the individual defendant. But this raises another question: If the sentencing court rejects the 100-to-1 ratio, then what ratio should it apply? For reasons stated by this Court in this and other cases and by the D.C. Circuit in Pickett, this Court previously had adopted a 20-to-1 and, in each case, explained its reasons for applying that ratio. For the reasons explained below, this Court now adopts a 1-to-1 crack-to-powder ratio, and will apply the 1-to-1 ratio in all crack cocaine cases

that come before it for sentencing in the future. In other words, this Court **will** take precisely the approach endorsed by the Supreme Court in _Spears_. . . . "

This case represents a defendant who was sentenced for possession of less than 25 grams of cocaine base and received a significant amount of a prison term. Defendant Adams was charged with having possession of approximately 18 grams of crack and the original imposition of sentencing by this court was 96 months with a Base Offense Level of 26, minus 3 points for acceptance of responsibility eqqaling to a Total Offense Level of 23. With the U.S. Sentencing Commission amending the Sentencing Guidelines in November 2007 and made retroactive on March 3, 2008, the district court (Judge Doumar) calculated defendant's guidelines to be the following:

```
(Original) Base Offense Level of 26
Acceptance of responsibility        - 3
Total Offense Level                 +23
*Upward departure                   +1 Level
Amended Base Offense Level          +24
Retroactive Amendment-2 points      - 2
Amended Total Offense Level         +22
*Amended months of imprisonment     63-78 months
```

The district court and Judge Doumar came to the above-mentioned calculations as a result of a preponderance of the evidence standard when Judge Doumar used prior criminal offenses which did not apply to defendant to arrive at the amended guideline ranges. However, pursuant to the Guidelines established by the Commission, defendant arrived at the following calculations to be the appropriate guidelines and the range of months in prison.

```
(Original) Base Offense Level of 26
Acceptance of responsibility        - 3
Total Offense Level                 +23
```

-3-

```
Retroactive amendment-2 pt. reduct. - 2
*Amended Total Offense Level        +21
*Amended months imprisonment=57 to 71 months
```

The aforementioned position undertaken by the defendant of the
sentencing guidelines and the range of months in prison was as a
direct result of the U.S. Sentencing Guidelines and the "Commentary"
contained therein, as well as under the relevant Chapter within the
Guidelines governing computation of a defendant's criminal history.

Defendant Adams, at this time, now seeks this court's exer-
cise in discretion in consideration of resentencing based on "**sent-
encing disparity**" through a 1-to-1 crack-to-powder cocaine ratio.
Defendant is gratified that the Sentencing Commission has already
taken a small step to ameliorate the 100-to-1 ratio contained in
existing statutes by amending the guidelines for crack cocaine
offenses. Defendant is sure that federal courts will continue to
calculate the guidelines in crack cocaine cases as required by
decisions of the U.S. Supreme Court.

Defendant Adams recognizes that the discretionary authority
to sentence both outside the guidelines and under the **disparity**
involving "**1-to-1 ratio**" in crack cocaine and powder cocaine cases,
or to even create their own quantity ratio. The United States
Attorney offices have instructed courts that they should "**act with-
in their discretion**" to fashion a sentence that is consistent with
the objectives of 18 U.S.C. §3553(a), which includes bringing the
relevant case-specific facts to the attention of the courts.

As the history of this issue make clear, there has been some
disagreement about whether cocaine sentencing policy should change

-4-

and, if so, how should it change. This case is one of the starting points in this mission regarding sentence disparity. It is greatly appreciated and requested that much consideration be given towards exercising sentence disparity in Defendant Adams' case here today.

## Sentence disparity

Defendant Adams, in addressing the issue of disparity in sentencing will outline both the findings of the court and what is established pursuant to the Guidelines, has presented the following under both "crack" (cocaine base) and "powder."

Under the "Drug Quantity Table," when comparison of "powder" to "crack" cocaine, for the same amount of crack (cocaine base) (defendant was convicted through a plea to possession of __18 grams__ of crack) Defendant Adams sentencing guidelines for "Cocaine powder" would be

> \*\*Base Offense Level of +12 (having less
>                                         25 grams)
> \*\*Criminal History Category of III
> \*\*Range of months of imprisonment will be 15 to 21

Under the Drug Quantity Table the months of imprisonment cannot exceed a Criminal History Category of IV with a range of months of imprisonment of 21 to 27 months "if defendant possessed, or was found guilty of, more than 25 grams but less than 50 grams of "cocaine powder" equaling out to cocaine base (crack) when considering sentence disparity. Defendant was originally sentenced to 96 months under the crack guidelines in effect at the original imposition of sentencing, but, subsequently, the court, through an amendment of the Guidelines involving a reduction of two levels, resentenced defendant to an amended sentence of 78 months.

-5-

Consequently, when the district court exercises its discretion and considers all factors related to and involving "sentence dis-parity," the end result must be to resentence defendant under sent-ence disparity to the appropriate "months of imprisonment" consist-ing of 15 months to 21 months with a criminal history category III, or, in the alternative, with a criminal history category of IV the guideline range months of imprisonment must be 21 months to 27 months.

## Jurisdiction

This district court is vested with both jurisdiction over the subject-matter and jurisdiction over the defendant. Pursuant to §71 American Jurisprudence 2d, this court has subject-matter juris-diction as to the nature of the cause of action and the relief sought; the power of the court to hear and thereby determine the outcome of this case.

The Full Faith and Credit Clause, Article IV, Section I, of the United States Constitution, provides "Full Faith and Credit shall be given . . . . to the judicial proceedings of every state. The statute that implements the clause, 28 U.S.C.A. §1738, further specifies that "a court's preclusion rules should control matters originally litigated in that . . . . court." The Full Faith and Credit Clause ensures that judicial decisions rendered by the courts in one circuit are recognized and honored in every circuit court jurisdiction. The Constitutional requirement as to full faith and credit must be interpreted in connection with other pro-visions of the U.S. Constitution.

## Statement of the case

Defendant Adams was initially sentenced following his plea of guilty to one (1) count of the indictment handed down by the Grand Jury for violation of 21 U.S.C. §841(a)(1) and (b)(1)(B)(iii), Possession with intent to distribute cocaine base ("Crack"). Defendant possessed less than 25 grams of "crack cocaine" in the approximate amount of 18 grams. As a result of defendant's plea, there was an agreement with the court and the government that the sentence to be imposed would consist of one count. This was defendant's first conviction, and arrest, under the federal statute, for such offense.

Prior to the actual sentence imposed by the district court, which was initially 96 months, which was subsequently reduced pursuant to an amendment of the Guidelines for a 2-level deduction for crack defenders, the Department of Probation computed defendant's guidelines on four separate occasions. Of the four computations that the probation department conducted, Defendant Adams had arrived at the one he believed to be correct under the Guidelines and the district court arrived at a different computation submitted by the proabtion department; the court chose the Guideline range that consisted of a Total (Amended) Base Offense Level of 22 and imposed sentencing at the top end of the sentencing range at 78 months. This term of imprisonment remains in effect to this day.

Defendant Adams respectfully request that he be greatly considered for resentencing under a 1-to-1 ratio from crack to powder cocaine. Defendant's attorney previously addressed this issue at his resentencing at the §3582(c)(2) proceedings.

-7-

## Factual determinations consistent
## with U.S. Sentencing Guidelines

The U.S. Sentencing Commission's strong desire for prompt legislative action notwithstanding, the problems associated with the 100-to-1 drug quantity ratio as detailed in the Commission's reports are so urgent and compelling that this court must review and consider sentence disparity in this case. Having concluded once again that the 100-to-1 drug quantity ratio should be modified, the Commission recognizes that establishing cocaine sentencing policy, as underscored by past actions, ultimately is Congress' prerogative.

While offense severity, based on drug type and quantity, is the preliminary determinant of the sentencing guideline range, an offender's criminal history also plays a significant role. In general, crack cocaine offenders have more extensive criminal history than powder cocaine offenders. Defendant Adams, when completely and thoroughly investigated, has no extensive criminal history as other crack cocaine offenders; practically little to none, that would prevent the relief sought here, and he therefore falls within the guideline and parameters as powder cocaine offenders.

Other Circuits, however, have endorsed a sentencing's courts discretion to consider the 1-to-1 drug quantity ratio. In United States v. Gunter, the Third Circuit reversed a sentence after the district court had declined to issue a non-guideline sentence where the defendant had asked it to consider the drug quantity ratio as a basis for sentecning below the guideline sentencing

range. (462 F.3d 237, 3rd Cir. 2006). The Third Circuit vacated
the sentence on grounds that it was procedurally unreasonable
because "the District Court here believed that it had no discret-
ion to impose a below-[g]uidelines sentence on the basis of the
crack/powder cocaine differential and, thus, treated the [g]uide-
lines range difference as mandatory in deciding the ultimate
sentence. The <u>Gunter</u> Court suggested that sentencing courts may
be able to sentence below the guideline range <u>based on "crack/
powder disparity</u>."

In <u>United States v. Pickett</u>, 475 F.3d 1347 (D.C. Cir. 2007),
the Court of Appeals for the D.C. Circuit similarly reversed a
crack defendant's sentence on the grounds that the district court
refused to consider the 1-to-1 drug quantity ratio when deter-
mining the defendant's sentence. The D.C. Circuit said the proper
approach "is to evaluate how well the applicable [g]uideline
effectuates the purpose of sentencing enumerated in Section §3553
(a)." The D.C. Circuit discussed the Commission's various reports
to Congress, noting especially the 2002 report. The D.C. Circuit
surmised that the Commission "believes that its [g]uideline for
crack distributors generates sentences that are 'greater than
necessary exaggerates the seriousness of the offense of crack
trafficking does not promote respect for the law, and does not
provide just punishment for the offense and that the district
court's refusal to consider whether sentencing the defendant in
accordance with the 1-to-1 drug quantity ratio would comport with

-9-

Section §3553(a) constituted a legal error.

Defendant Adams is in the exact same position as defendants in both Gunter and Pickett, and those defendants in the Northern District of West Virginia and other Fourth Circuit caselaw where the courts have been resentencing defendants through a 1-to-1 ratio for crack and powder cocaine offenses in their discretion. Another case from the D.C. Circuit, in United States v. Anthony T. Lewis, Criminal No. 04-0430 (PLF), decided June 9, 2009, that falls within the issues raised here and supports the position of Defendant Adams.

## ARGUMENT

### §3582(c)(2) is applicable here:

Accordingly, the relief sought must be granted pursuant to an issue refencing "sentence disparity" within the Guidelines, and United States v. Booker, 543 U.S 220, and United States v. Hicks, 472 F.3d 1167 (2006) permits a defendant to file such an action.

A court's resentencing of an offender pursuant to §3582(c) to account for a post-sentencing Guideline amendment, or a change in the law, which reduces the applicable range of punishment must apply the guidelines as advisory even though the old mandatory guideline scheme was in effect at the time of original sentencing. Booker abolished the mandatory guidelines regime in all context.

During defendant's confinement, the United States District Court for the Northern District of West Virginia, among other courts and Circuits, confirms that a 1-to-1 ratio for crack and powder cocaine offenses has been suggested to Congress. On July

-10-

29, 2009, the U.S. House of Representatives Judiciary Committee approved H.R. 3245, the "Fairness in Cocaine Sentencing Act of 2009," in an effort to eliminate any disparity between crack and powder cocaine in the criminal code. This has been approved and agreed upon by the U.S. Department of Justice and the President of the United States, and all U.S. Attorneys.

While it is true that a §3582(c)(2) proceeding is not a "full" resentencing, its purpose is to give the defendant a new sentence. This resentencing requires the court to calculate a new guideline range, considering the §3553(a) factors and thereby impose a new sentence based on the guidelines and sentence disparity. Regarding policy concerns, the resentencing is not inconsistent with any policy statements set forth in the guidelines. Therefore, this district court must consider what the sentence would have been had the disparity issue been in effect at the time of the original imposition of sentencing.

Since the issuance of the Guidelines Manual in October 1987, the U.S. Sentencing Commission have presented various changes to the guidelines, its policy statements, and official commentary that affects a defendant's sentence and to ameliorate overly harsh punishment and "unwarranted disparity" and to better serve §3553(a) factors.

Recognizing that after Booker and under 18 U.S.C. §3553(a) the Sentencing Guidelines were only one factor to consider in sentencing this court would have to consider; both the policy statements and its concerns underlying the crack/powder disparity

-11-

and the factors of §3553(a) as they apply to defendant's resent-encing. The Circuit Court  acknowledged that post-Booker the sent-encing commission's expertise still entitled the Guidelines to serious considerations, see, e.g., Booker v. United States, 543 U.S. at 245; Gall v. United States, 552 U.S. 38, 128 S.Ct. 586, 596-97, 169 L.Ed.2d 445 (2007); Kimbrough v. United Staes, 552 U.S. 85, 128 S.Ct. 558, 564, 169 L.Ed.2d 481 (2007), but concluded that in the case of crack cocaine the Commisison's expertise was reflected not in the Guidelines themselves, but in the numerous reports on the crack/powder disparity the Commission issued between 1995 and 2007.

The approach taken by the Lewis Court was endorsed by the D.C. Circuit in United States v. Pickett, 475 F.3d 1347, 374 U.S. App. D.C. 476 (D.C. Cir. 2007). In Pickett, the D.C. Circuit reviewed the history of the crack guidelines and noted that the Sentencing Commission itself has been "one of [the] severest critics" of those Guidelines. Specifically, the Court observed that "[f]or more than a dozen years," in numerous extensive reports, the Commission has argued strongly against retaining the 1-to-1 ratio. The Court further noted the Commission's recommendation to substi-tute a "20-to-1 ratio," a recommendation on which Congress never acted. In the end, the D.C Circuit not only concluded that sent-encing judges have discretion under Booker to consider and grant the ratio governing sentence disparity rather than to apply rigidly the 100-to-1 ratio embodied in the crack guidelines, but sggested that it would be an abuse of discretion for a judge not to at least

-12-

consider a 1-to-1 ratio.

Less than a year after the D.C. Circuit issued its opinion in Pickett, the Supreme Court announced its agreement with that approach in Kimbrough. Justice Ginsburg, writing for the Court, began by summarizing the history of the crack/powder disparity embodied in the 100-to-1 ratio. Justice Ginsburg noted that in formulating the crack guidelines, the sentencing commission did not use its empirical approach, but employed the "weight-driven scheme" of Congress' 1986 Anti-Drug Abuse Act. In other words, the Commission set base offense levels for drug offenders by adopting the Act's 100-to-1 ratio throughout the crack and powder cocaine guidelines. Given the history of the crack guidelines and the Commission's own view, reiterated on many occasions, that the crack/powder disparity produces disproportionately harsh sentences, the Supreme Court concluded that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve §3553(a)'s purposes; even in a mine-run case.

While it seemed clear from Kimbrough that courts had discretion to vary from the crack guidelines based on the same sort of overarching policy disagreements expressed by the Sentencing Commission in its reports, and not just based on individual factors in particular cases, there still were some courts that resisted that conclusion. This led to the most recent discussion of the matter by the Supreme Court in Spears v. United States, 129 S.Ct. 840, 172 L.Ed.2d 596 (2009)(per curiam). Kimbrough, the Court

-13-

stated in Spears, recognized the authority of district courts to vary from the crack guidelines "based on policy disagreements with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case." The Court also quoted with approval the dissent in the Eighth Circuit's en banc decision in Spears. In that dissent, Judge Colloton recognized that in Kimbrough the Supreme Court had

> established that even when a particular defendant
> in a crack cocaine case presents no special miti-
> gating circumstances -- no outstanding service to
> country or circumstances, no unusually disadvantaged
> childhood, no overstated criminal history score, no
> post-offense rehabilitation -- a sentencing court
> may nonetheless vary downward from the advisory
> guideline range. The court may do so based solely
> on its view that the 100-to-1 ratio embodied in
> the sentencing guidelines for the treatment of crack
> cocaine versus powder cocaine creates "an unwarranted
> disparity within the meaning of §3553(a)," and is
> "at odds with §3553(a). The only fact necessary to
> justify such a variance is the sentencing court's
> view that the 100-to-1 ratio creates an unwarranted
> disparity.

United States v. Spears, 533 F.3d 715, 719 (8th Cir. 2008(en banc).

In short, it now is established that a sentencing court can reject the 100-to-1 ratio of the Guidelines as a matter of policy and without regard to the characteristics of the individual defendant. But this raises another question: "If the sentencing court rejects the 100-to-1 ratio, then what ratio should it apply?" For reasons stated by the Lewis Court and other cases, including the D.C. Circuit in Pickett, where a number of Circuits and the Supreme Court had previously adopted a 20-to-1 ratio and, in each case, explained its reasons for applying that ratio. For the

-14-

reasons stated herein, this district court should now adopt a
"1-to-1 crack to powder ratio" and apply that ratio to Defendant
Adams and resentence accordingly. In his request of the court,
defendant request that the district court take precisely the
approach endorsed by the Supreme Court in Spears:

> "A sentencing judge who is given the power to
> reject the disparity created by the crack-to-
> powder ratio must also possess the power to
> apply a different ratio which, in his judgment,
> **corrects** the disparity. Put simply, the ability
> to reduce a mine-run defendant's sentence
> necessarily permits adoption of a replacement
> ratio . . . . [D]istrict courts are entitled to
> reject and vary categorically from the crack-to-
> powder and the crack-guidelines based solely on
> a policy disagreement with those Guidelines."

Spears v. United States, 129 S.Ct. at 843-44.

Like other Circuits and the Department of Justice have con-
cluded, there are sound policy reasons for adopting a 1-to-1 ratio
for all crack cocaine sentencings. In doing so, this district
court must adopt the reasoning of Judge Mark W. Bennett in his
recent decision in United States v. Gully, Criminal No. 08-3005,
2009 U.S. District Court Lexis 42888, WL 1370898 (N.D. Iowa May
18, 2009). In that opinion, Judge Bennett reviewed in some detail
the history of the crack/powder disparity, the Sentencing Commiss-
ion's view, the Kimbrough and Spears decisions, that the crack-
powder sentencing disparity fosters disrespect for the criminal
justice system by promoting unwarranted disparities, the welcome
but incomplete ameliorating change in the crack guidelines adopted
by the Sentencing Commission in 2007, and other policy considerat-
ions.

Based on his review of that history, Judge Bennett concluded

-15-

that "it now appears that even the Commission's recommendation of a 20-to-1 ratio - the ratio that both Judge Bennett and the D.C. Circuit consistently applied following Booker -- was influenced at least as much by prior congressional rejections of lower ratios [proposed by the Commission] and the policy considerations that Congress had mandated be part of the calculus of the approximate ratio than by empirical evidence concerning the appropriate sentence for crack offenses. Therefore, based on all considerations found and adopted thus far, Defendant Adams should, must, be resentenced under a 1-to-1 ratio insofar as under crack/powder disparity.

This court is aware, as did Judge Bennett, that the Department of Justice recently endorsed completely eliminating the disparity between crack and powder cocaine sentencing. On April 29, 2009, Assistant U.S. Attorney General Lanny Breuer testified before the Subcommittee on the Judiciary. Assist U.S. Attorney General Breuer stated that the Justice Department now supports an approach that would eliminate the disparity between crack and powder cocaine sentencing and fully and completely account for any aggravating factors such as violence, injury, recidivism or possession or use of weapons in individual cases.

In testimony at the same hearing, Judge Reggie B. Walton of the D.C Circuit, testifying on behalf of the Judicial Conference of the United States, noted that experience has shown that the existing disparity [between crack and powder sentences] may actually frustrate (instead of advance) the goals of the Sentencing

-16-

Reform Act, "and that there is now almost universal support in the United States to reduce the existing sentencing disparity between crack and powder cocaine sentencings.

For all these reasons, this district court must agree, as a matter of policy with any amendment regarding the 100-to-1 crack-to-powder ratio currently embodied in the Sentencing Guidelines, the 20-to-1 ratio the Sentencing Commission more recently endorsed for practical political reasons, that the 1-to-1 ratio presently endorsed by the Department of Justice and the Obama Administration must be accorded great respect. Therefore, the sentencing judge in this case must conclude that the appropriate ratio here, in Defendant Adams case, that a 1-to-1 ratio is proper and justified, and the court can then separately consider all aggravating applicable factors, if any, and apply mitigating factors in this case. This approach is consistent with the Guideline revisions originally proposed by the Sentencing Commission in 1995 in its first report on the disparity between crack and powder cocaine.

Like the D.C Circuit in the Lewis case, the district court can employ a three-step approach to resentencing defendant in his crack cocaine offense involving disparity. First, the district court can calculate the sentencing range under the existing sentencing guidelines and apply, if appropriate, any aggravating and/or mitigating factors contained within the Guidelines. Second, the district court will calculate an alternative sentencing range using a "1-to-1 ratio" by using the powder cocaine guidelines and then factor in any appropriate adjustments or departures contained

-17-

in the Guidelines. Third, the district court will consider whether it is appropriate to vary from the alternative 1-to-1 sentencing range based on the court's consideration of the relevant factors set forth in 18 U.S.C. §3553(a) as they apply to Defendant Adams, which include, but, of course, not limited to, any aggravating factors such as violence, injury, recidivism, or possession or use of weapons.

It should be noted that any criminal history that has been attached to or related to defendant are misdemeanors which pursuant to the U.S. Sentencing Guidelines cannot be used in computing any criminal history because there were no confinement of more than 30 days in jail and no placement on probation exceeding more than one year, and other prior offenses that cannot be used under any circumstances. Additionally, there are one offense where defendant was neither charged or convicted of the offense and this can be verified by the Office of Probation Department. Consequently, Defendant Adams has no prior criminal history, or background, that would prevent or deny the relief he requests.

## Consistency with applicable policy statements

Section §3582(c)(2) permits the district court to reduce a defendant's sentence after considering the §3553(a) factors "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission, and with the approach thus far taken by the U.S. Department of Justice and The Congress, and, now, the Administration of the President of the United States involving any disparity in sentencing defendants for crack (cocaine

-18-

base) and powder cocaine offenses. Therefore, applying the Guide-
lines in an advisory manner is consistent with the policy state-
ments set forth by the Commission in its Guidelines. Furthermore,
the district court can go below the Guideline minimum when modi-
fying a sentence under §3582(c)(2). The court must consider the
term of imprisonment that it would have imposed had the sentence
within the guidelines been in effect at the time defendant was
originally sentenced.

There will be no contradiction of the policy statements or the
statute because it would not produce an outcome that would not be
permissible in 2007. In other words, the action that would be taken
by this court at this time would have been the same when defendant
was sentenced initially by the court in this case.

The only reasonable solution here, and the only just remedy
in this matter, is for the district court to vacate the original
sentence imposed, and (re)sentence Defendant Adams under a "1-to-1"
ratio under the Drug Quantity Table referencing crack-to-powder
cocaine in the same manner other Circuits have thus far done, and
which have been adopted by the Department of Justice and the Admini-
stration of President Obama and proposed to the U.S. Senate in the
elimination of any and all disparity involving defendants with both
crack and powder cocaine offenses under the U.S. Sentencing Guide-
lines.

## Conclusion

WHEREFORE, FOR THE FOREGOING REASONS HERETOFORE stated, and
any found by the district court, Defendant Adams hereby respect-

fully request that the Court (re)sentence him in accordance with and pursuant to disparity in sentencing involving his conviction and sentencing for crack (Cocaine Base) to that of "powder" cocaine under the Drug Quantity Table found in the U.S. Sentencing Guidelines.

FURTHERMORE, Defendant Adams respectfully request in the exercise of discretion by the district court insofar as the court not wishing to exercise its discretion herein until such Act has been passsed into federal law by the United States Senate and thereby signed into law by the President of the United States, that this matter be held in abeyance until such time as the "Fairness in Cocaine Sentencing Act of 2009 (H.R. 3245, affecting sentence disparity governing crack and powder cocaine disparity) has been made federal law until relevant statute. This request will not prejudice either the district court or the United States, and Defendant Adams will not benefit from such request that this matter be held in abeyance."

Respectfully submitted,

*Kenyatta Hasani Adams*
Kenyatta Hasani Adams
#57394-083
P.O. Box 1000 - Low
Federal Correctional Complex
Petersburg, VA 23804

Dated: November 17, 2009.    Notary: *Worthy D. Malone*
Worthy D. Malone
County of Prince George, Virginia
Notary Registration Number: 7223294
My Commission Expires: 03/31/2012

-20-



Kenyatta H. Adams
#57394-083
P.O. Box 1000 - Low
Federal Correctional Complex
Petersburg, VA 23804

Clerk of Court
United States District Court
Eastern District of Virginia
600 Granby Street
Norfolk, VA 23510



RECEIVED BY

Legal Mail